Jeffrey J. Hepworth, ISB No. 3455
J. Grady Hepworth, ISB No. 10364
HEPWORTH LAW OFFICE
2229 W. State Street
P.O. Box 2815
Boise, ID 83701-2815
Telephone: (208) 333-0702
Facsimile: (208) 246-8655
courtservice@idalawyer.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARON GALLOWAY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BOISE CITY/ADA COUNTY HOUSING AUTHORITIES, a public corporation, CITY OF BOISE, a municipality, ADA COUNTY, a public corporation,<br><br>Defendants. | Case No.<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff Sharon Galloway ("Galloway") by and through her counsel of record, for causes of action arising from discrimination, retaliation, and wrongful termination under the Family Medical Leave Act, 29 U.S.C. 2615 *et seq*. ("FMLA"). Defendants are also liable for their tortious conduct in the form of negligent infliction of emotional distress.

## I.  PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff Sharon Galloway is currently and at all material times was a resident of City of Boise, County of Ada, State of Idaho. Mrs. Galloway at all material times was employed by the Boise City/Ada County Housing Authorities.

- 1

2.      Defendant Boise City/Ada County Housing Authorities ("BC/ACHA") is believed to be a public corporation pursuant to I.C. § 31-4205. BC/ACHA's principal place of business is located at 1001 S. Orchard Street, Boise, Idaho, 83705. BC/ACHA was jointly established by Defendants City of Boise and Ada County, both of whom are believed to be proper defendants and whom are jointly and separately liable for the violations of law, conduct, and omissions of BC/ACHA, by and through its agents, employees, and contractors.

3.      This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1331. The Plaintiff asserts federal subject matter jurisdiction pursuant to 29 U.S.C. § 2615 *et seq.*

4.      This Court has supplemental jurisdiction of the state law claims and tortious causes of action asserted herein pursuant to 23 U.S.C. § 1367.  The factual basis of the state law claims for Defendant's tortious conduct are identical to the operative facts underlying the federal claims.

5.      Venue is proper pursuant to 28 U.S.C § 1391, as all Defendants reside in the State of Idaho, and all acts or omissions occurred within the judicial district of the United States District Court for the District of Idaho.

## II.  GENERAL ALLEGATIONS

6.      Mrs. Galloway has proudly served as a BC/ACHA employee since December 1992. Mrs. Galloway dedicated her entire professional career to furthering BC/ACHA's mission of helping provide our community with safe and affordable housing. As one of BC/ACHA's longest-tenured and most qualified employees, BC/ACHA has been both Mrs. Galloway's home and one of her greatest passions for nearly twenty-seven years.

7.      In November 2013, Mrs. Galloway first exercised her rights under the Family Medical Leave Act, 29 U.S.C. § 2612, *et seq.* in order to undergo necessary surgeries; a bladder repair, hysterectomy and associated reconstructive surgery, as well as surgery on her foot.

- 2

8.      Unfortunately, Mrs. Galloway's medical conditions arose at a time of significant turmoil within BC/ACHA, as one of Mrs. Galloway's colleagues had recently been diagnosed with cancer and the housing authority was simultaneously moving her department from the second floor to the third-floor offices.

9.      Although Mrs. Galloway did everything within her power to mitigate the effects of her necessary medical absence (including postponing her own procedure to accommodate her co-worker's ongoing cancer treatment) Mrs. Galloway returned to work to find herself the target of a malicious and hostile campaign of harassment. It quickly became clear that many of Mrs. Galloway's co-workers did not appreciate the fact that Mrs. Galloway was required to exercise her rights under the FMLA at that time, and several co-workers began to ostracize her and otherwise subjected her to a campaign of gossip and discriminatory disparagement.

10.      Although Mrs. Galloway remained committed to BC/ACHA's mission statement and her service to the community, the underhanded conduct of her colleagues began to take a significant toll on Mrs. Galloway's mental health. Mrs. Galloway began to suffer from chronic anxiety and panic attacks. Mrs. Galloway sought therapy and counseling in order to endure her environment and to continue working.

11.      The discrimination and retaliation against Mrs. Galloway intensified in approximately March 2019 under Public Housing Manager, Donna DeThorne. Ms. DeThorne began fabricating pretextual and discriminatory disciplinary measures against Mrs. Galloway. Ms. DeThorne escalated the workplace harassment against Mrs. Galloway, burdening Mrs. Galloway with unnecessary pressure and pretextual disciplinary measures.

12.      For example, on March 13, 2019, Mrs. Galloway received a write-up from Ms. DeThorne, in which Ms. DeThorne criticized Mrs. Galloway's appearance and clothing choices, as well as the fact

- 3

that Mrs. Galloway occasionally reapplied makeup. Despite the fact Mrs. Galloway's appearance always met BC/ACHA's dress code standards, and that such superficial criticisms had no bearing on her ability to perform her duties as a public housing specialist. Mrs. Galloway was discriminatorily placed on a performance improvement plan ("PIP").

13.    Following the placement of the PIP, it quickly became clear that nothing Mrs. Galloway did would be good enough for Ms. DeThorne. No matter what Mrs. Galloway did or how competently she served BC/ACHA, Ms. DeThorne would find a reason to criticize or discipline Mrs. Galloway. The pretextual disciplinary measures were clearly motivated against her from the discriminatory animus arising from her prior FMLA leave.

14.    The discriminatory workplace pressure caused Mrs. Galloway significant emotional distress, which physically manifested in such a severe anxiety attack that Mrs. Galloway's counselor required her to take sick leave from March 18–22, 2019. Mrs. Galloway began contemplating retirement due to the workplace discrimination, despite the fact she loved her job and otherwise wished to continue serving the community for many years to come.

15.    In approximately May 2019, Mrs. Galloway's doctors recommended she undergo another foot surgery to remove a painful bunion that impaired her ability to complete daily tasks, including her essential functions at work. The pain from her medical condition combined with the workplace harassment from her colleagues at BC/ACHA was unbearable. Mrs. Galloway quickly prepared to undergo the surgery, with the hope that once she returned to work healthy after the six to eight weeks of recovery, that she would be able to better address the workplace discrimination she was facing on a daily basis.

16.    Mrs. Galloway diligently completed all of the necessary FMLA forms and paperwork, and submitted her formal application on July 2, 2019. However, when Mrs. Galloway informed Ms.

- 4

DeThorne of her intention to take FMLA leave, Ms. DeThorne became visibly angry, and quickly excused Mrs. Galloway from her office. Mere hours after Mrs. Galloway submitted her application for FMLA leave, Ms. DeThorne, in the course and scope of her duties as BC/ACHA Public Housing Manager, terminated Mrs. Galloway, effective immediately.

17.        The timing and circumstances of Mrs. Galloway's termination is direct evidence of discrimination and retaliation under the Family and Medical Leave Act. BC/ACHA illegally considered Mrs. Galloway's past use of FMLA leave as a negative factor in her performance, and intentionally terminated her in order to prevent her from exercising her right to obtain protected medical leave under the FMLA.

18.    BC/ACHA's conduct is a willful violation of federal law, and Mrs. Galloway also reserves the right to pursue claims for intentional and/or negligent infliction of emotional distress. BC/ACHA's illegal discrimination has caused Mrs. Galloway to lose at least three years of lost wages that she otherwise would have earned, as well as lost employment benefits such as medical and dental insurance, PERSI retirement contributions, and medical expenses associated with treatment for her emotional and mental damages. Mrs. Galloway has also been required to retain legal counsel, for which BC/ACHA is liable pursuant to 29 U.S.C. § 2617(a)(3).

19.    Pursuant to Idaho Code Title VI, Chapter 9, Galloway timely submitted a *Notice of Claim for Damages Under the Idaho Tort Claim Act* on or about August 1, 2019. More than ninety (90) days has elapsed since the *Notice of Claim* was filed and served, and therefore Galloway has properly exhausted all administrative remedies and timely brings the following causes of action.

## IV. <u>CAUSES OF ACTION</u>

### COUNT ONE:

### Violations of the Family Medical Leave Act, 29 U.S.C. 2615 *et seq*. ("FMLA")

20.    Plaintiff realleges and incorporates by reference all paragraphs set forth above.

21.    Galloway was entitled to exercise paid and/or unpaid medical leave pursuant to 29 U.S.C. § 2612 because of serious health conditions.

22.    On or about July 2, 2019, Defendants were formally aware of Mrs. Galloway's intent to exercise her right to FMLA medical leave under Title 29, Chapter 28. Defendants' immediate termination of Mrs. Galloway interfered, restrained, and otherwise denied her right to exercise leave under FMLA. Defendant's conduct was a violation of 29 U.S.C. § 2615(a)(1).

23.    Defendants discriminated and retaliated against Galloway in violation of 29 U.S.C. 2615(a)(2) by considering Galloway's use of FMLA leave as a negative factor in the decisions to subject Galloway to unsubstantiated and pretextual performance evaluations, and an unfair and discriminatory Performance Improvement Plan (PIP). Defendant's continuous and systematic campaign of harassment foreseeably caused Mrs. Galloway to suffer from extreme emotional distress, including physical manifestations such as generalized anxiety and panic attacks.

24.    As a direct and proximate result of Defendants' discrimination and interference with Galloway's FMLA rights, Galloway suffered damages in the form of lost wages, lost employment and retirement benefits, and increased medical expenditures, as well as general damages for pain, suffering, and emotional distress.

25.    Galloway requests all remedies available under 29 U.S.C. § 2617, including all lost wages, salary, employment benefits, or other compensation, interest for lost economic wages and benefits,

litigation costs and fees, expert fees, reasonable attorney's fees, and all other reasonable costs proximately caused by Defendant's illegal conduct.

26.     Galloway also contends Defendant's violations were intentional and committed in bad faith, and requests that this Court award additional liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT TWO:

## Negligent Infliction of Emotional Distress ("NIED")

27.     Plaintiff realleges and incorporates by reference all paragraphs set forth above.

28.     Defendants owed Galloway a legal duty not to discriminate and retaliate against her for reasonable use of her medical leave and medical treatment.

29.     Defendants breached that duty when they subjected Galloway to a pretextual campaign of harassment and took adverse employment actions against her.

30.     Defendant's wrongful retaliatory conduct and pervasive harassment directly and proximately caused severe emotional distress, which has physically manifested itself in anxiety, panic attacks, sleeplessness, loss of identity, and other forms of physical manifestations to be proven at trial.

31.     Galloway is entitled to recover damages arising from this emotional distress, including medical bills, counseling bills, lost wages, lost future earning capacity, pain and suffering, and other general damages.

### III.    ATTORNEY'S FEES

32.    As a result of the discriminatory, unlawful and outrageous conduct of the Defendant, set

forth more particularly above, the Plaintiff was required to obtain the services of an attorney to

represent her interests.  Plaintiff is entitled to be awarded attorney's fees, litigation expenses and

costs, and expert fees pursuant to 29 U.S.C. § 2617, Idaho Code § 12-120, and Federal Rule of

Civil Procedure 54.  A reasonable attorney's fee is $400.00 per hour for Hepworth Law Offices.

### IV.    DEMAND FOR TRIAL BY JURY

33.    Plaintiff demands trial by jury pursuant to the Seventh Amendment of the United States

Constitution, Idaho Const. Art. I, Sec. 7, and Fed. R. Civ. P. Rules 38, 39 for all claims alleged

herein.

### V.    PRAYER FOR RELIEF

WHEREFORE, Sharon Galloway requests judgment against the Defendants as follows:

a).    For past and future lost wages and benefits in an amount to be determined at trial by jury;

b).    For compensatory and consequential damages, including past and future medical expenses, to

be determined at trial;

c).    For noneconomic damages, including pain, suffering, and emotional distress;

d).    For reinstatement to a full-time position at the rate of pay not less than her previous hourly

rate, plus benefits and job protection and/or future lost wages instead of reinstatement;

e).    For reinstatement of full fringe benefits and seniority rights;

f).    For an award for emotional distress damages and/or liquidated damages in an amount to be

determined at trial;

g).    For an award of interest (both pre- and post-judgment) at the highest lawful rate pursuant to

28 U.S.C. § 1961, I.C. § 28-22-104, and relevant state and federal law;

- 8

h).    For an award of court costs, including expert witness fees as appropriate, and attorney fees in an amount to be determined at the rate of $400.00 per hour.

i).    For such other legal or equitable damages as this Court deems just and appropriate.

*PLAINTIFF DEMANDS TRIAL BY JURY*

DATED this 16th day of March, 2020.

HEPWORTH LAW OFFICES

By   /s/ *J. Grady Hepworth*

Jeffrey J. Hepworth
J. Grady Hepworth
*Attorneys for Plaintiff*

- 9