UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHARON GALLOWAY,<br><br>                    Plaintiff,<br><br>    v.<br><br>BOISE CITY/ ADA COUNTY<br>HOUSING AUTHORITIES,<br><br>                    Defendant. | Case No.  1:20-cv-00136-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Sharon Galloway's two count complaint against her former employer, the Boise City/ Ada County Housing Authority ("BCACHA"), alleges a violation of the Family Medical Leave Act ("FMLA") and negligent infliction of emotional distress ("NIED"). (Dkt.1.)  Before the Court is BCACHA's motion for summary judgment.  (Dkt. 29.)  On August 15, 2022, the Court conducted a hearing on the motion.  (Dkt. 38.)  For the reasons that follow, the Court will grant in part and deny in part BCACHA's motion due to the existence of material factual disputes to be resolved by a jury.

**MEMORANDUM DECISION AND ORDER - 1**

# FACTS[1]

Boise City/Ada County Housing Authorities ("BCACHA") is a public corporation located and operating in Boise, Idaho.  BCACHA facilitates and administers housing and benefits programs to low income, elderly, and disabled citizens.

Galloway worked at BCACHA from December 1992 until July 2, 2019, as a Housing Program Assistant.  Although the scope of Galloway's job duties is somewhat disputed, her duties included showing apartments, leasing up tenants, and conducting certifications of household composition and income for tenants of three of the agencies' high rise apartment buildings and ten duplexes.

Sandi Bernstrom was Galloway's direct supervisor from 1997 to 2018.  When deposed in this case, Bernstrom testified that Galloway's work was good at times, but also noted issues arose with some of her job tasks.  However, Bernstrom added that, due to the nature of the work, mistakes and errors were unavoidable and reasonable to expect with regard to any given tenant file audit.

From November 12, 2013, to January 20, 2014, Galloway was provided medical leave from BCACHA under the FMLA for the first time during her employment, to have multiple surgeries.

In July 2018, Donna DeThorne was hired and replaced Bernstrom as Galloway's supervisor.  In December 2018, DeThorne emailed Galloway about deficiencies she noted about Galloway's performance and completion of tenant files.  On March 13, 2019,

---

[1] Except where noted, the following facts appear undisputed.  The Court relied upon BCACHA's statement of material facts (Dkt. 29-39), Galloway's response thereto (Dkt. 30-5), and the affidavits, declarations and other exhibits in the record.

**MEMORANDUM DECISION AND ORDER - 2**

DeThorne placed Galloway on a performance improvement plan ("PIP") regarding deficiencies in tenant files, missing deadlines, and Galloway's appearance and clothing choices. During the PIP meeting, DeThorne discussed with Galloway the deficiencies in her job performance and recommended changes to address the deficiencies, as well as a six-month observation period for improvement. The PIP indicated that, at the end of the six-month period, Galloway's performance would be reevaluated, and termination from employment as a form of discipline was a possibility if she did not show sustained improvement.[2]

From March 18 through March 22, 2019, Galloway took sick leave from BCACHA. She remained out of the office from the last week of March through the first of week of April 2019, due to a planned vacation that followed her sick leave. During this vacation, Galloway injured her foot.

On May 2, 2019, Galloway's podiatrist, Scott Graviet, DPM, diagnosed Galloway with a bunion condition on the foot she injured during vacation. Dr. Graviet recommended that Galloway undergo surgery to remove the bunion. Recovery post-surgery was estimated to last six to eight weeks. Dr. Graviet also gave Galloway nonsurgical options for treatment, such as prescribed orthotics.

On June 18, 2019, DeThorne met with Galloway and provided her a second PIP. This second PIP acknowledged some improvement in Galloway's performance, but it also discussed some areas still lacking in improvement since the March 2019 PIP, such as

---

[2] Galloway contends that, at no time between December 2018 and March 2019, DeThorne communicated with her or warned her about any job performance deficiencies. Pl.'s SDMF ¶ 7.

**MEMORANDUM DECISION AND ORDER - 3**

tenants receiving letters and documents on or after the date they were to be returned.  The

second June 2019 PIP notified Galloway that failure to meet performance objectives

within 30 days would result in discipline including termination.  According to DeThorne,

Galloway provided no assurances that her performance would improve during this

meeting.  They also discussed whether Galloway would be having surgery on her foot,

and Galloway informed DeThorne that she did not yet have a surgery date scheduled.

On June 20, 2019, Galloway met with BCACHA staff accountant, Kris Reeves.

Reeves handles FMLA requests and documentation.  Galloway informed Reeves that she

was on a PIP and that it was not going well.  On the morning prior to this meeting,

Galloway emailed Reeves a memorandum, inquiring about leave for a possible surgery.

On her copy of this memorandum, Reeves noted that she spoke with Galloway on June

20, 2019, about needing a surgery date prior to requesting leave.  Although Reeves did

not inform Galloway that BCACHA's policy required 30 days' notice before surgery,

Reeves reminded Galloway of the expectation that Galloway would communicate with

her supervisor.

Galloway's original date for her bunion surgery was scheduled by Dr. Graviet's

office for July 23, 2019.  On June 24, 2019, Galloway informed Reeves that her surgery

was scheduled for July 23, 2019.

Also, on June 24, 2019, Galloway met with DeThorne and DeAnna Watson,

Executive Director of BCACHA, to discuss concerns with her job performance.

DeThorne and Watson informed Galloway that her performance had not improved, and

**MEMORANDUM DECISION AND ORDER - 4**

termination was a possibility.  Galloway also told DeThorne and Watson that she wanted to "retire with grace."

On June 27, 2019, Galloway claims she called Dr. Graviet's office and left a message, informing the doctor's office that her health insurance was changing, and she would need an earlier surgery date.  Dr. Graviet's assistant returned Galloway's call and left a message that the surgery could be moved to July 5, 2019, but she and the doctor would need to discuss it more during her appointment on July 1, 2019.  Also, on June 27, 2019, Reeves notified Galloway that her FMLA paperwork, including BCACHA's FMLA policy, the Department of Labor's Notice of Employee Rights, and a medical certification form, was ready for Galloway to pick up from Reeves.

On July 1, 2019, Galloway picked up the FMLA paperwork prepared by Reeves. Galloway also attended a preoperative appointment with Dr. Graviet that same day, and Dr. Graviet completed the medical certification portion of the FMLA paperwork.  In the medical certification, Dr. Graviet indicated that Galloway would need six to eight weeks of leave to recover following the surgery.

BCACHA contends that DeThorne planned to inform Galloway of the decision to terminate her employment on July 1, absent a satisfactory explanation of her continued failure to meet her performance objectives under the PIPs.  However, due to Galloway being out of the office for medical appointments, DeThorne and Watson planned to meet with Galloway on July 2.

On July 2, 2019, Galloway returned the completed FMLA paperwork to Reeves during the midmorning.  Per the submitted paperwork, Galloway's leave was scheduled

**MEMORANDUM DECISION AND ORDER - 5**

from July 5 until August 31, 2019, providing for six to eight weeks of recovery—even though Galloway previously informed Reeves that her surgery was scheduled for July 23. On July 2, 2019, Watson and DeThorne met with Galloway to inform her that her employment with BCACHA was terminated.  A letter of termination, dated July 2, 2019, also was sent to Galloway.  (Dkt. 29-7.)  As of July 2, 2019, the termination of Galloway's employment was effective immediately as a result of poor performance.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  There must be a genuine dispute as to any material fact – a fact "that may affect the outcome of the case."  *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the court must not make credibility findings.  *See id.* at 255. Direct testimony of the non-movant must be believed, however implausible.  *See Leslie v. Grupo ICA*, 198 F.3d

**MEMORANDUM DECISION AND ORDER - 6**

1152, 1159 (9th Cir. 1999).  On the other hand, the court is not required to adopt unreasonable inferences from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to a material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the non-moving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in their favor.  *See Devereaux, 263 F.3d at 1076*.  The non-moving party must go beyond the pleadings and show "by…affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists.  *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  However, the court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).  Instead, the "party opposing summary judgment must direct [the court's] attention to specific, triable facts."  *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

**MEMORANDUM DECISION AND ORDER - 7**

## DISCUSSION

BCACHA seeks summary judgment on both claims in Galloway's complaint. Regarding her FMLA claim[3], BCACHA argues that there is no genuine issue of material fact for three reasons: (1) Galloway's failure to provide timely and sufficient notice of her need for leave; (2) Galloway's request for leave was not a factor in BCACHA's decision to terminate her employment; and (3) lack of prejudice resulting from the termination decision.  Def.'s Mem. Supp. Mot. Summ. J. 6-14.  With regard to the claim for negligent infliction of emotional distress, BCACHA argues that there is no genuine issue of material fact that: (1) BCACHA did not breach its duty owed to Galloway under the FMLA; (2) Galloway had no physical manifestations of emotional distress; and (3) any physical manifestations of injury experienced by Galloway were from pre-existing conditions and not causally related to the termination of her employment.  Def.'s Mem. Supp. Mot. Summ. J. 15-19.

As discussed below, considering the material factual disputes presented by the evidence before the Court on BCACHA's motion, the Court cannot conclude, as a matter of law, that: (1) Galloway failed to provide timely and sufficient notice of her intent to take leave; (2) Galloway's intent to take FMLA-protected leave was not a negative factor in the decision to terminate Galloway's employment; and (3) Galloway did not experience a real impairment of her rights and prejudice resulting from the termination of her employment.  The Court also cannot determine, as a matter of law, that no physical

---

[3] The Complaint mentions both interference and retaliation under the FMLA.

**MEMORANDUM DECISION AND ORDER - 8**

manifestations of emotional distress occurred as a result of the termination of Galloway's employment. The Court can find, however, that, as a matter of law, Galloway has failed to state a FMLA claim for discrimination and retaliation based on leave taken in 2013 and 2014. Thus, the Court will grant in part and deny in part BCACHA's motion for summary judgment.

## I.    Family Medical Leave Act

The Family Medical Leave Act ("FMLA") creates rights for employees such as "the right to use a certain amount of leave for protected reasons" and "the right to return to [her] job or an equivalent job after using leave." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C §§ 2612(a), 2614(a)). There are two causes of action recognized under the FMLA— (1) interference, and (2) discrimination or retaliation. *Sanders v. City of Newport*, 657 F.3d 772, 777 (9th Cir. 2011). The statute defines the interference claim by making it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C § 2615(a)(1). Unlawful interference includes a denial or discouragement from using FMLA leave. *See Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003) (citing 29 C.F.R. § 825.220). The statute defines discrimination or retaliation by prohibiting any employer from "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C § 2615(a)(2).

BCACHA contends that both the FMLA interference and retaliation claims fail based on undisputed facts. In response, Galloway contends that BCACHA discriminated

**MEMORANDUM DECISION AND ORDER - 9**

and retaliated against her for exercising her right to take FMLA-protected leave in 2013 and 2014.  Galloway also contends that BCACHA illegally interfered with, restrained, and denied her attempt to exercise her FMLA leave rights by terminating her employment on July 2, 2019.

　　　　a.  <u>FMLA Discrimination and Retaliation Claim</u>

A portion of Galloway's complaint is premised on a theory of retaliation.  In it, however, Galloway conflates allegations of "interference" and "discrimination and retaliation" under Count I.  First, Galloway alleges that "Defendant[']s[] immediate termination of Mrs. Galloway interfered, restrained and otherwise denied her right to exercise leave under FMLA" in violation of 29 U.S.C. § 2615(a)(1).  Additionally, Galloway claims that "Defendants discriminated and retaliated against Galloway in violation of 29 U.S.C. § 2615(a)(2) by considering Galloway's use of FMLA leave [in the past] as a negative factor in the decisions to subject Galloway to unsubstantiated and pretextual performance evaluations, and an unfair and discriminatory Performance Improvement Plan (PIP)."  Compl. ¶ 23, (Dkt. 1.)

The Ninth Circuit has recognized two distinct causes of action that arise under the FMLA.  Under Section 2615(a)(2), the FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  A plaintiff may establish a prima facie case of discrimination or retaliation by showing that: (1) she took or requested protected leave; (2) the employer subjected her to an adverse employment action; and (3) the requesting or taking of protected leave was a 'negative factor' in the adverse employment decision."

**MEMORANDUM DECISION AND ORDER - 10**

*Ellis v. Vial Fotheringham LLP*, No. 3:16-CV-01945-AC, 2019 WL 1553676, at *14 (citing *Bachelder*, 259 F.3d at 1125 and 29 C.F.R. § 825.220(c)).

The question here is whether there is a triable issue of material fact as to whether FMLA leave taken by Galloway in 2013 and 2014 was impermissibly considered as a factor when BCACHA placed Galloway on a Performance Improvement Plan in March of 2019, or in other adverse employment actions, including the second PIP and the termination of her employment.  The Ninth Circuit has held that the statutory and regulatory language of FMLA makes it clear that, where an employee is subjected to "negative consequences… simply because [s]he has used FMLA leave," the employer has interfered with the employee's FMLA rights.  *Bachelder*, 259 F.3d at 1124.  In contrast, where an employee is punished for opposing unlawful practices by the employer, the issue then becomes one of discrimination and retaliation.  *Id.*; *see also Xin Liu*, 347 F.3d at 1136.  Similarly, in *Diaz v. Fort Wayne Corp.*, 131 F.3d 711 (7th Cir.1997), the Seventh Circuit explained that FMLA claims "do not depend on discrimination" because the issue is not that "the employer treated one employee worse than another," but that every employee has substantive rights under the FMLA that the employer must respect.  *Id.* at 712.

Galloway asserts "discrimination and retaliation" based on the FMLA leave time she took in 2013 and 2014.  Her complaint states, "Defendant discriminated and retaliated against Galloway in violation 29 U.S.C. 2615(a)(2) by considering Galloway's use of FMLA as a negative factor in the decision to subject Galloway to unsubstantiated and pretextual performance evaluations, and an unfair and discriminatory Performance

**MEMORANDUM DECISION AND ORDER - 11**

Improvement Plan (PIP)."  Compl. ¶ 23, (Dkt. 1.)  Her assertions, and evidence in the record, do not, however, meet the requirements of a FMLA discrimination or retaliation claim.  Rather, Galloway's claim is more accurately considered as an interference claim. Specifically, Galloway's only claim is interference by BCACHA in her right to request medical leave by virtue of the second PIP and the termination of her employment.

In this case, Galloway alleges "Defendant's continuous and systematic campaign of harassment foreseeably cause[d] [her] to suffer from extreme emotional distress, including physical manifestations such as generalized anxiety and panic attacks."  Compl. ¶ 23.  However, Galloway has not produced any evidence that would demonstrate a causal link between Galloway's protected FMLA leave in 2013 and 2014 and BCACHA's placement of her on either PIP or terminating her employment in 2019.  In opposing BCACHA's motion, Galloway has not specifically identified any evidence supporting a discrimination and retaliation claim, other than Galloway's Affidavit with her conclusory allegation that she was met with "hostility and animosity" and her journal entries of alleged tension between Galloway and Watson upon Galloway's return to the office in January of 2014.  Galloway Aff. ¶ 27, Ex. 13, (Dkt. 30-1.)  At the hearing, Galloway continued to allege that Watson perpetuated a workplace culture against employees taking leave time from work.  However, neither the briefing nor the hearing elucidated an evidentiary foundation for a claim of discrimination or retaliation. Therefore, the claim of discrimination and retaliation based on FMLA leave taken in 2013 and 2014 cannot escape summary judgment.

**MEMORANDUM DECISION AND ORDER - 12**

Even if a change in the work culture occurred as assessed by Galloway, there is no evidence to support a causal connection between Galloway's past protected medical leave and the placement of her on a PIP by a new supervisor in March of 2019. If Watson's alleged discrimination after Galloway returned from medical leave in 2014 deterred Galloway from participating in FMLA-protected activities, such treatment by her employer would qualify as an interference with FMLA rights. *See Bachelder*, 259 F.3d at 1124. Therefore, Galloway's claim does not fall under the "anti-retaliation" or "anti-discrimination" provision of § 2615(a)(2), which prohibits "discriminat[ion] against any individual for opposing any practice made unlawful by the subchapter." Accordingly, the Court finds that no reasonable jury could conclude that BCACHA retaliated against Galloway for opposing any practice made unlawful by the FMLA pursuant to Section 2615(a)(2), and summary judgment on this aspect of Count I will be granted.

b. <u>FMLA Interference Claim</u>

Galloway's evidence in support of her interference claim relates to her request for and intended use of FMLA leave for her bunion surgery in 2019. *See Bachelder*, 259 F.3d at 1124 (explaining that complaints alleging adverse employment actions taken against employees because they request FMLA leave should be construed as claims of interference). To state an FMLA interference claim, a plaintiff must establish the following elements: (1) she was eligible for FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of intent to take leave; and (5) her employer denied her FMLA benefits. *Sanders*, 657 F.3d at 778; *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243

**MEMORANDUM DECISION AND ORDER - 13**

(9th Cir. 2014).  The employee also has the burden of proving "real impairment of their rights and resulting prejudice."  *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002) (noting Section 2617 requires employees to show consequential harm).  To prevail on an interference claim, a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in [an adverse employment decision]."  *Bachelder*, 259 F.3d at 1125.  BCACHA argues Galloway cannot meet her burden on elements four and five.  The Court will address each argument in turn.

### i.    *Whether Galloway Requested Leave Under the FMLA*

Under element four, BCACHA contends Galloway failed to provide adequate notice of her intent to take leave pursuant to the FMLA and BCACHA's own policy.

FMLA claims generally present ubiquitous questions of fact and law.  Although the regulations implementing the FMLA set out an objective test with five distinct elements, the role of the fact finder is to "look at the record and decide if the evidence supports the elements of that test."  *Harris v. Cochise Cty.*, No. CIV 08-008-TUC-CKJ, 2009 WL 10673480, at *14 (D. Ariz. Sept 30, 2009) (citing *Thorson v. Gemini*, 205 F.3d 370, 377 (8th Cir. 2000)).  For element four, generally, whether the notice is adequate is a question of fact.  *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1209 (S.D. Cal. 1998) (citing *Hopson v. Quitman County Hosp. & Nursing Home, Inc.*, 126 F.3d 635 (5th Cir.1997) ("[s]uch determinations are questions of fact and better left to the jury with its traditional function of assessing human behavior and expectations")).  Thus, even if there is undisputed evidence, "rational triers of fact could nevertheless differ on whether the

**MEMORANDUM DECISION AND ORDER - 14**

notice was adequate." *Mora*, 16 F. Supp. 2d. at 1209 (citing *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 976 (5th Cir. 1998)).  However, several courts have granted summary judgment for the employer on the inadequacy of notice for unforeseeable FMLA leave.  *Id.*

To satisfy the fourth element of an interference claim, a plaintiff must provide "sufficient notice of [her] intent to take leave."  *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014).  As explained in the regulation, this element requires an employee to "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request."  29 C.F.R. § 825.303(b). Depending on the facts, "such information may include that a condition renders the employee unable to perform the functions of the job."  *Id.*  But, "[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA."  *Id.*  The regulation recognizes merely "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations."  29 C.F.R. § 825.303(b).  But employers cannot avoid liability through willful blindness.

The Ninth Circuit has instructed that "[e]mployees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply."  *Bachelder*, 259 F.3d at 1130.  In addition, "[i]t is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements."  *Xin Liu*, 347 F.3d at 1134.  When assessing the adequacy of information provided by an

**MEMORANDUM DECISION AND ORDER - 15**

employee, "the critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." *Mora*, 16 F. Supp. 2d at 1209 (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995)).

The FMLA regulations set forth two notice requirements. First, the plaintiff must show that her notice was timely. 29 C.F.R. § 825.303(a). Second, the notice must have been "sufficient to make the employer aware that the employee needs FMLA qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). Once an employee invokes her FMLA rights by alerting her employer to her need for potentially qualifying leave, the regulations shift the burden to the employer to take certain affirmative steps to process the leave request. 29 C.F.R. § 825.303(b).

Here, the Court finds a disputed issue of material fact exists on the timeliness of Galloway's notice of intent to take leave. "An employee must provide the employer at least 30-days' advance notice before FMLA leave is to begin if the need for the leave is foreseeable." 29 C.F.R. § 825.302(a). When the need for leave is not known in advance, "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). Under these circumstances, "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.*

**MEMORANDUM DECISION AND ORDER - 16**

BCACHA alleges that Galloway's request for leave was foreseeable, and therefore, Galloway was required to provide 30-days' notice in advance of the bunion surgery date, as required by the FMLA.  23 C.F.R. § 825.302.  BCACHA argues that, because Galloway's elective surgery was scheduled for July 23, 2019, during a doctor's appointment on June 6, 2019, Galloway should have provided notice of her need for leave and requested leave at that time.  In the alternative, BCACHA argues that, even if the need for leave was not foreseeable, Galloway did not provide notice "as soon as practicable."  In response, Galloway contends that her need for leave was not known prior to June 6, that the surgery date of July 23 given to her by her doctor's office on June 6 was tentative, and that the need for leave was not officially confirmed until her appointment with Dr. Graviet on July 1, 2019.  Nonetheless, Galloway contends that verbal statements she made to DeThorne and Jillian Patterson, the Housing Programs Director, during the meeting among the three of them on June 18, 2019, provided timely notice.

Under the second notice requirement—sufficiency—a disputed issue of material fact also exists. BCACHA claims that Galloway's notice was not sufficient in two specific respects.  First, BCACHA contends that the discussion about a potential surgery that occurred between Galloway, DeThorne, and Patterson during the June 18, 2019 meeting did not constitute sufficient notice under the FMLA.  Second, BCACHA contends that the meeting between Galloway and Reeves on June 20, 2019, also did not provide sufficient notice.  In response, Galloway asserts that both her statements to

DeThorne and her meeting with Reeves constituted sufficient notice.  Galloway also contends her notice to Reeves complied with the applicable FMLA regulations.

Ultimately, the claims Galloway asserts in this case do not depend on whether Galloway provided timely and sufficient notice to BCACHA of the precise date she needed leave for bunion surgery because her employment was terminated effective July 2.  This was before leave would have commenced, with Galloway's surgery taking place on either the July 23 or the July 5 date.  Instead, the denial of leave time was consequential to the immediate termination of her employment by BCACHA and was not based on untimely or insufficient notice.  BCACHA's contention now that Galloway's failure to provide notice 30 days prior, or "as soon as practicable," appears to a be a post-hoc rationalization for claiming she cannot satisfy the elements of her interference claim.

However, the evidence fails to demonstrate that, but for the decision to terminate her employment on July 2, 2019, Galloway's request for FMLA-leave could or would have been denied for untimely or insufficient notice.  Rather, the evidence can reasonably demonstrate that BCACHA was on notice of Galloway's need to take leave, even if such notice was untimely.  For example, on June 18, 2019, DeThorne inquired of Galloway about the possibility of imminent FMLA-leave.  *See* DeThorne Dep. 109:16-111:1, (Dkt. 29-14.)  Next, on both June 20 and June 24, 2019, Galloway met with Reeves to discuss the bunion surgery expected to occur in the near future.  *See* Reeves Dep. 29:7-13, (Dkt. 29-22.)  And, even if the alleged notice to DeThorne on June 18 or the alleged notice to Reeves on June 24th was not timely, Reeves provided Galloway with a full FMLA packet on July 1.  *See id.* at 34:25-37:18.

**MEMORANDUM DECISION AND ORDER - 18**

Upon Galloway's return of the packet to BCACHA, Reeves told Galloway that Reeves "would continue with the FMLA process." *Id.*  By continuing with the FMLA process, Reeves had determined that Galloway was eligible to request FMLA leave time based on the notice of eligibility and rights and responsibilities provided to Galloway.  *Id.* This evidence reasonably suggests—contrary to BCACHA's argument—that, but for the termination of Galloway's employment, her request for FMLA leave likely would have been approved.  Thus, whether the alleged untimeliness and insufficiency of Galloway's notice played a role in the termination decision raises questions of fact that may not be resolved on summary judgment.[4]

ii.  *Whether Galloway's Request for FMLA Leave Was a Factor in Termination*

Under element five, BCACHA argues that, because Galloway's employment was terminated for her failure to comply with the March and June 2019 PIPs, Galloway was not wrongfully denied FMLA rights or benefits.  More precisely, BCACHA contends that only Galloway's deficient performance, not her request for FMLA leave, factored into BCACHA's decision to terminate her employment.  However, here a genuine dispute of material fact precludes the Court from finding that (1) Galloway's FMLA request was not a negative factor in the termination decision, and (2) Galloway did not suffer prejudice from the alleged interference—the termination of her employment, "effective

---

[4] Galloway also claims that BCACHA waived its statutory right to enforce notice requirements against Galloway by not providing a required eligibility notice to her pursuant to Section 2619(a).  The Court need not address this argument at this time, because genuine disputes of material fact exist as to the timeliness and adequacy of the notice and must be reserved for the jury.

**MEMORANDUM DECISION AND ORDER - 19**

immediately"— on July 2, 2019.  Accordingly, the Court will deny BCACHA's motion for summary judgment on Galloway's FMLA interference claim.

BCACHA maintains that there is no evidence that FMLA-protected leave was a negative factor in the decision to terminate Galloway's employment.  Def.'s Mem. Supp. Mot. Summ. J. 9.  BCACHA contends that Galloway's inability or unwillingness to comply with the performance improvement items in the March 13 and June 18 PIPs was the sole reason for her termination.  *Id.*  BCACHA also alleges that the decision to terminate Galloway's employment was made prior to her request to take FMLA-protected leave.  *Id.* at 11-12.

Although BCACHA produced evidence showing that the March 2019 PIP was prepared prior to any request by Galloway for FMLA leave for surgery, this evidence alone does not demonstrate, as a matter of law, that BCACHA made the decision to terminate Galloway's employment prior to her request for medical leave.  Further, even if the alleged performance deficiencies are evidenced by both the March and June 2019 PIPs, this evidence does not conclusively demonstrate that BCACHA definitively decided to terminate Galloway's employment before the end of the performance improvement periods identified in each of the PIPs.  Although BCACHA has attempted to explain the shortening of the performance improvement periods, genuine issues of material fact preclude the Court from accepting these explanations as a matter of law.  They must be left for the fact finding by the jury.

Although Galloway has not introduced any direct evidence to support that her request for FMLA-protected leave was a negative factor in BCACHA's decision to

**MEMORANDUM DECISION AND ORDER - 20**

terminate her employment, and instead relies on circumstantial evidence, it is undisputed that the decision to terminate was finalized the day she requested FMLA-protected leave. Also, as previously discussed, BCACHA knew that surgery and leave time for recovery were a likely possibility—in fact, DeThorne raised the subject during the June 18 meeting when she placed Galloway on the second PIP in less than three months after the first PIP. Given Galloway's contentions that her job performance during March to June 2019 was not deficient, questions of fact exist as to whether Galloway's performance was so deficient after June 18 and before July 2 to warrant termination.

Genuine issues of material fact exist with regard to Galloway's alleged performance deficiencies.[5]  DeThorne alleges that, on June 26, 2019, she reviewed Galloway's tenant files and identified non-compliance issues, such as multiple letters that were dated several days prior but had not yet been mailed.  On June 27, 2019, DeThorne alleges meeting with Galloway to discuss the identified file issues, and that Galloway stated that she intended to deliver the letters to the tenants.  However, Galloway disputes that, during her final week of employment, she had failed to address the performance objectives provided in the June 18 PIP.  She also disputes that she met with DeThorne or Watson between June 24, 2019, and July 2, 2019, to discuss such issues.  Hence, credibility determinations to reconcile these factual disputes regarding Galloway's job performance are reserved for the jury.

---

[5] Galloway's overall job performance between March 13, 2019, and June 18, 2019, is disputed.  BCACHA alleges that DeThorne did not see Galloway making sufficient changes in her job performance.  DeThorne Decl ¶ 9.  Galloway disputes that any deficient performance on her behalf continued through this entire period.

**MEMORANDUM DECISION AND ORDER - 21**

The Court also finds that genuine issues of material fact exist as to whether the performance deficiencies alleged by BCACHA were a pretextual justification for BCACHA's decision to terminate Galloway's employment.  Although "a close temporal proximity between a claim for FMLA-protected leave and an adverse employment action may support an inference of causation, it should not be considered 'without regard to its factual setting.'"  *Biba v. Wells Fargo & Co.*, No. C 09-3249 MEJ, 2010 WL 4942559, at *18 (N.D. Cal. Nov. 10, 2010) (quoting *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003)).  Here, the March 2019 PIP provided a six-month timeline for performance improvement and reevaluation.  Additionally, the June 18 PIP provided Galloway 30 days for improvement and reevaluation.  However, BCACHA's decision to terminate was made on July 1, 2019, and Galloway was officially terminated on July 2, 2019, effective that day.

BCACHA alleges that, due to the non-compliant work and Galloway's failure to demonstrate an intent or motivation to comply with the performance objectives outlined in the PIPs, DeThorne had decided to terminate Galloway's employment on June 27, 2019, and "continued to make preparations to terminate Ms. Galloway's employment" after that day.  DeThorne Decl. ¶¶ 16-17, (Dkt. 29-4.)  Given the explicit performance improvement periods provided in the PIPs, the Court is unconvinced that, as a matter of law, Galloway's alleged non-compliance with the performance objectives of the PIPs was the only factor in BCACHA's decision to terminate her employment.

Aside from the allegations of poor performance discovered on June 26, 2019, BCACHA has failed to offer uncontroverted evidence explaining the hastening of

**MEMORANDUM DECISION AND ORDER - 22**

Galloway's performance improvement periods.  During the hearing, BCACHA's counsel argued that Galloway's unwillingness to change hastened the timeline and cited to Galloway's deposition testimony regarding Galloway's belief at that time that termination was inevitable. ("They'd already made up their minds. That's what she said to me. So I had, from my perspective, I just got told I'm not going to make it to the 18th of July no matter what happens, because they've already made up their minds." Galloway Dep. 111:2-111:7, (Dkt. 29-10.))  This explanation fails to reconcile Galloway's deposition testimony that recounts DeThorne's verbal "deadline" of July 18, 2019, for Galloway to meet her performance improvements.  ("Because more or less, Deanna said, you've got until July 18th, and if we don't think you've held up or met our requirements, we will terminate you."  Galloway Dep. 110:21-23, (Dkt. 29-10.))

In the Court's view, the only changed circumstance between the PIP on June 18, 2019, and the termination on July 2, 2019, was Galloway's formal request for FMLA leave that was submitted on July 2, 2019.  Although DeThorne contends that she "continued to make preparations" to terminate Galloway's employment as of June 27, 2019, such a vague comment requires further inquiry worthy of credibility determinations.  A jury could reasonably infer that, because both timelines for performance improvement were hastened, Galloway's requested FMLA-leave was a factor in the termination decision.

       iii.   *Whether Galloway was Prejudiced by the Termination*

Finally, BCACHA argues that, because they contend Galloway did not intend to return to work at BCACHA following her leave for surgery and recovery, Galloway was

**MEMORANDUM DECISION AND ORDER - 23**

not prejudiced by the termination of her employment. In addition to the prima facie elements of a FMLA interference claim, the employee has the burden of proving "real impairment of their rights and resulting prejudice." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90-91 (2002) (noting 29 U.S.C. § 2617 requires employees to show consequential harm).

Here, there is no dispute that, on June 11, 2019, Galloway provided a representative of the Public Employee's Retirement System of Idaho (PERSI) with a September 1, 2019, date for her retirement. However, there is a genuine issue of material fact as to whether Galloway's decision to pick that retirement date represented her intention to retire effectively that date, or the date was a placeholder for her to obtain a calculation of her retirement benefits from PERSI. On June 11, 2019, Galloway and her husband met with Sheila Wageman, a PERSI representative, to complete her retirement application. Wageman Dep. 14:17-15:5, (Dkt. 29-12); Galloway Dep. 151:23-152:4, (Dkt. 29-10.)

In its motion, BCACHA argues that, because Galloway intended in June to retire on September 1, 2019, and later signed her retirement documents that very day, Galloway was not prejudiced by the termination of her employment, effective July 2. However, on June 11, 2019, only Wageman knew that Galloway had signed the PERSI application with a September 1 retirement date. In fact, DeThorne and Watson claim they did not learn that Galloway had been in communication with PERSI until they met with Galloway on June 24, 2019. Galloway denies that she informed DeThorne and Watson

**MEMORANDUM DECISION AND ORDER - 24**

on June 24 that she had definitely decided to retire on September 1, because she had not done so.  Galloway Aff. ¶ 108, (Dkt. 30-1.)

Although BCACHA contends the PERSI application in June and the undisputed fact that Galloway did retire on September 1 demonstrates Galloway did not intend to return to work after bunion surgery, Galloway's testimony suggests the contrary. Further, Galloway's contention that the September 1 date was a placeholder is supported by the deposition testimony of the PERSI representative, Sheila Wageman.  Specifically, Wageman confirmed that retirement dates in an application can be amended, that such amendments are common practice, and that Galloway had amended her retirement date on past occasions.  Wageman Dep. 29:10-14, 28:10-15, (Dkt. 29-12.)  Such evidence reasonably suggests that Galloway may be able to prove she was prejudiced by the timing of the termination of her employment.

Based on the above, the Court finds genuine issues of material fact exist regarding whether Galloway intended to return to work after taking leave for the bunion surgery and recovery, and whether and to what extent Galloway was prejudiced by the termination of her employment that preceded her official retirement date.

## II.    Negligent Infliction of Emotional Distress

In Idaho, a claim for negligent infliction of emotional distress requires the plaintiff to establish the following five elements: (1) the existence of a duty; (2) a breach of that duty; (3) proximate cause; (4) damages; and (5) physical manifestation of the injury.  *See Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct. App. 2009); *see also Bollinger v. Fall River Rural Elec. Co-op.*, Inc., 272 P.3d 1263, 1273 (Idaho 2012).  A claim for NIED is

**MEMORANDUM DECISION AND ORDER - 25**

not automatically precluded in the employment context.  *See Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 625 (Idaho 2013).  However, "the mere termination of an at-will employee—without more—does not constitute the breach of duty sufficient to support an NIED claim."  *Bollinge*r, 272 P.3d at 1274.

In the briefing, BCACHA argues that Galloway's claim for negligent infliction of emotional distress fails for three reasons: (1) BCACHA did not breach its duties owed to Galloway under the FMLA; (2) Galloway did not suffer from physical manifestations of emotional distress; and (3) even if Galloway suffered physical manifestations of emotional distress, her symptoms were pre-existing and not causally connected to the termination of her employment.  Def.'s Mem. Supp. Mot. Summ. J. 15-19.

As discussed above, questions of fact preclude the Court from finding that BCACHA did not interfere with Galloway's rights and benefits under the FMLA. Therefore, genuine issues of material fact also exist as to whether BCACHA breached its duty under the FMLA to support her NIED claim.

A reasonable jury also could conclude that Galloway did, in fact, suffer physical manifestations of emotional distress as a result of the interference with her FMLA rights and benefits.  BCACHA contends that, as a matter of law, Galloway cannot establish physical manifestations of emotional distress for two primary reasons: (1) Galloway denied experiencing physical manifestations during her deposition testimony; and (2) Galloway's physical conditions, such as sleep and stomach issues, preexisted the termination of her employment.

**MEMORANDUM DECISION AND ORDER - 26**

With regard to Galloway's denial of physical manifestations during her deposition, BCACHA's first argument insinuates a sham affidavit.  During her deposition, Galloway testified as follows:

> Q. And I did want to ask, in your complaint, as I understand it, your [sic] alleging that you have suffered from emotional distress. And I wanted to ask you, have you had any, I guess, physical manifestations or ailments because of the emotional distress?
>
> A. You mean, have I rolled over physically? No. Not for the most part. I don't think so. So I'll put it that way. But my kids would tell me that I'm very defensive, but physically speaking, I don't have any issues. You're talking physically?

Galloway Dep. 145:1-12, (Dkt. 29-10.)  BCACHA contends this testimony is fatal to Galloway's NIED claim.

Immediately following the deposition, however, Galloway corrected her testimony pursuant to Fed. R. Civ. P. 30(e), stating that she misunderstood the question.  *See* Deposition Errata, (Dkt. 29-36.)  Galloway corrected the answer in her deposition testimony to state that she "suffered from insomnia, nightmare, anxiety, depression, panic attacks, and isolation. [She] also suffered physically from indigestion and [was] diagnosed with GERD."  *Id.*  Following close review of the deposition testimony and consideration of BCACHA counsel's arguments during the motion hearing, the Court concludes that Galloway's corrections to her deposition testimony do not rise to the level of a sham affidavit, as argued by BCACHA.  However, BCACHA's counsel will be provided the opportunity to cross examine Galloway at the time of trial if they wish to clarify the otherwise inartful question and answer given during the deposition.

**MEMORANDUM DECISION AND ORDER - 27**

Additionally, BCACHA argues that, even if Galloway suffered from the physical manifestations listed in her Deposition Errata, these conditions preexisted the placement of her on the PIPs and the termination of her employment.  Galloway counters that her counselor, Amy Miles, diagnosed Galloway with sleep and stomach issues after the first PIP, and that these conditions persisted after the termination of Galloway's employment. Amy Miles Dep. 37:5-38:8, 38:17-39:10, (Dkt. 29-16.)  Regardless of whether these conditions existed before the first PIP or the termination, the Court cannot find, as a matter of law, that these adverse employment actions did not have an aggravating emotional impact on Galloway.

Although BCACHA alleges that Counselor Miles did not discern a specific stressor, Galloway contends that Miles classified her symptoms as manifestations of severe emotional distress.  Accordingly, whether and to what extent Galloway suffered physical manifestations of emotional distress due to adverse employment actions taken against her by BCACHA must be left for the jury to decide.  Summary judgment on Galloway's NIED claim on the bases argued by BCACHA will be denied.

## CONCLUSION

Based upon the discussion above, the Court concludes there are disputed issues of material fact concerning whether BCACHA interfered with Galloway's rights under the FMLA by terminating her employment, and whether she can satisfy all elements of proof for the NIED claim.  However, summary judgment is appropriate with regard to Galloway's claim of discrimination and retaliation based on FMLA leave taken in 2013

**MEMORANDUM DECISION AND ORDER - 28**

and 2014.  In all other regards, BCACHA's motion for summary judgment will be denied.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for Summary Judgment (Dkt. 29) is **GRANTED in part** and **DENIED in part.**

2) The Court will conduct a telephonic scheduling conference to set pre-trial deadlines and this matter for jury trial.  A separate notice of hearing is forthcoming.

DATED: September 29, 2022

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 29**